PEOPLE v STEELE

Docket No. 299641. Submitted March 2, 2011, at Lansing. Decided April
14, 2011, at 9:05 a.m. Leave to appeal denied, 490 Mich 861.

James C. Steele was charged in the Jackson Circuit Court with
possession of methamphetamine, as well as several other charges.
Following a report from a loss-prevention officer that defendant
had purchased methamphetamine precursors, a police officer had
conducted an investigative stop of defendant's automobile. During
the course of that stop, defendant told the officer that there were
materials for manufacturing methamphetamine and methamphet-
amine itself in the car. The officer took defendant to the police
department and advised him of his rights under *Miranda v
Arizona*, 384 US 436 (1966). Defendant waived his rights and,
upon questioning, repeated the statements he had made at the
roadside stop. Defendant subsequently moved to suppress the
evidence seized and his statements to the police. The court,
Thomas D. Wilson, J., granted the motion, concluding that the
traffic stop was illegal and that the evidence obtained from
defendant's vehicle was the fruit of an illegal search. The court
also found that defendant was in custody for purposes of *Miranda*
during the roadside interrogation and, therefore, that his state-
ments were illegally obtained. Lastly, the court found that defen-
dant's statements at the police station were the fruit of an illegal
roadside custodial interrogation. The prosecution appealed by
leave granted.

The Court of Appeals *held*:

1. A police officer may make a brief investigative stop and
detain a person in an automobile if the officer has a reasonable,
articulable suspicion that the person is engaged in criminal
activity. The reasonableness of the suspicion must be determined
case by case on the basis of the totality of the facts and circum-
stances, and the officer's conclusion must be drawn from reason-
able inferences based on the facts in light of the officer's training
and experience. The tip from the loss-prevention officer, who had
provided reliable information on several occasions in the past, that
a customer had purchased methamphetamine precursors, includ-
ing several packages of Sudafed and a gallon of camping fuel,

coupled with the officer's training and experience with regard to the manufacturing of methamphetamine, formed a solid basis for the reasonable suspicion necessary to justify the investigative stop of defendant's vehicle. The trial court erred by suppressing the fruits of the search.

2. When a lawful investigative stop of an automobile has been executed, an officer's brief questioning of the driver within the scope of the stop does not subject the driver to a custodial interrogation that would implicate *Miranda* requirements. The circumstances justified the investigative stop, the officer asked a minimal number of questions immediately after the stop in an attempt to confirm or dispel the officer's suspicions, and defendant voluntarily answered the questions. The trial court erred by suppressing defendant's roadside statements.

3. Because the officer was not required to advise defendant of his *Miranda* rights at the time of the roadside questioning, the trial court erroneously suppressed defendant's subsequent statements at the police station after concluding that they had been tainted by his earlier statements. Moreover, even if an initial statement was illegally obtained in violation of *Miranda*, a subsequent statement can be lawfully obtained after the defendant has been advised of and waived his or her *Miranda* rights as long as any taint from the earlier obtained statement has been removed. The key consideration is whether the later questioning constituted a new and distinct experience and genuinely presented a choice to follow up on an earlier admission.

Reversed and remanded.

1. SEARCHES AND SEIZURES — INVESTIGATIVE STOPS — AUTOMOBILES — REASONABLE BASIS.

A police officer may make a brief investigative stop and detain a person in an automobile if the officer has a reasonable, articulable suspicion that the person is engaged in criminal activity; the reasonableness of the suspicion must be determined case by case on the basis of the totality of the facts and circumstances, and the officer's conclusion must be drawn from reasonable inferences based on the facts in light of the officer's training and experience (US Const, Am IV; Const 1963, art 1, § 11).

2. CONSTITUTIONAL LAW — *MIRANDA* WARNINGS — NECESSITY — MOTOR VEHICLE STOPS.

The warnings articulated in *Miranda v Arizona*, 384 US 436 (1966), are not required unless the accused is subject to a custodial

interrogation; a motorist detained for a routine traffic or investigative stop is ordinarily not in custody for purposes of *Miranda*.

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Henry C. Zavislak*, Prosecuting Attorney, and *Jerrold Schrotenboer*, Assistant Prosecuting Attorney, for the people.

*Rappleye & Rappleye, P.C.* (by *Robert K. Gaecke, Jr.*), for defendant.

Before: FITZGERALD, P.J., and O'CONNELL and METER, JJ.

FITZGERALD, P.J. The prosecution appeals by leave granted the trial court's order granting defendant's motion to suppress both his statements to the police and the evidence seized from his vehicle following an investigative stop. We reverse and remand.

### I. FACTS AND PROCEDURAL HISTORY

On March 11, 2010, a Blackman Township Public Safety desk sergeant received a telephone call from Carol Williams, a loss-prevention officer employed by the Meijer store in Jackson. Williams had been trained to identify and monitor customers who might be purchasing precursors for the manufacture of methamphetamine. Williams informed the sergeant that a man had purchased packages of Sudafed and one gallon of Coleman fuel, both of which are known precursors for methamphetamine. Williams followed the person out of the store and observed him get into a Ford Taurus and drive off.

The desk sergeant contacted Blackman Township road patrol officer Brent Doxtader and provided him with the information relayed by Williams. According to Officer Doxtader, Williams had been trained by Black-

man Township Public Safety and the Jackson County Narcotics Enforcement Team regarding the precursors for methamphetamine. Williams would contact officers to advise them of suspicious activities at Meijer involving the purchase or theft of methamphetamine precursors. During his employment, Officer Doxtader had had contact with Williams regarding methamphetamine investigations on more than 10 occasions, and the information that Williams provided had "always been spot on."

After receiving the information from the sergeant, Officer Doxtader located the Ford Taurus on US-127 and conducted an investigative stop. He requested defendant's driver's license and vehicle paperwork. Defendant responded that he did not have a driver's license. Officer Doxtader asked defendant to get out of the vehicle and, as a safety precaution, had him place his hands on the roof of the car. Officer Doxtader then informed defendant that he possessed information that there were controlled substances in the vehicle and asked defendant whether that information was accurate. Defendant responded that there was methamphetamine in the vehicle's door. Officer Doxtader proceeded to engage in a brief conversation with defendant during which defendant answered affirmatively when asked if he used or "cooked" methamphetamine. Defendant also indicated that there were materials for manufacturing methamphetamine in the vehicle.

After this conversation, Officer Doxtader arrested defendant for possession of methamphetamine and for driving without a valid driver's license. Officer Doxtader handcuffed defendant and placed him in the backseat of his patrol car. Officer Doxtader subsequently searched defendant's vehicle and retrieved the methamphetamine that defendant had indicated was in the door.

Officer Doxtader transported defendant to the Blackman Township Public Safety Department and placed him in an interview room. After activating the room's recording system, Officer Doxtader advised defendant of his *Miranda*[1] rights. Defendant indicated that he understood and waived those rights. Officer Doxtader then interviewed defendant, who essentially repeated the statements he had made during the roadside questioning approximately 45 minutes earlier.

Defendant later moved to suppress both the evidence found in his vehicle and the statements to Officer Doxtader. Defendant claimed that the evidence was obtained in violation of the Fourth Amendment right to be free from unreasonable searches and seizures because the police lacked the requisite particularized suspicion necessary to conduct an investigative stop. Defendant also asserted that Officer Doxtader had subjected him to custodial interrogation at the location of the stop without first advising him of his *Miranda* rights. Finally, defendant asserted that the statements he made at the police station were inadmissible as the fruit of an illegal stop and an illegal roadside interrogation.

At the suppression hearing, the prosecutor argued that Officer Doxtader had a reasonable suspicion to stop defendant's vehicle based on the combination of the officer's training and experience and the tip from a trained and experienced loss-prevention officer who had knowledge of the precursors of methamphetamine and who had provided reliable information to the police in the past. The prosecutor also argued that even if defendant's initial roadside statement had been obtained in violation of *Miranda*, Officer Doxtader's subsequent questioning of defendant at the police station

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

constituted a new and different experience from the roadside interrogation.

The trial court suppressed the evidence and defendant's statements. The court opined that "the purchase of only one package of Sudafed and camping fuel is not enough to meet the standard of a particularized suspicion." Thus, the court found that the traffic stop was illegal and that the evidence obtained from defendant's vehicle was the fruit of an illegal search. The court also found that defendant was in custody for purposes of *Miranda* during the roadside interrogation and, therefore, that his statements were illegally obtained. Lastly, the court found that defendant's statements at the police station were the fruit of an illegal roadside custodial interrogation because "there were no intervening circumstances to purge the taint between the statements made at the side of the road to the statements made in-house."

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's ruling on a motion to suppress. *People v Williams*, 472 Mich 308, 313; 696 NW2d 636 (2005). Although this Court engages in a de novo review of the entire record, it will not disturb a trial court's factual findings unless those findings are clearly erroneous. *People v Jenkins*, 472 Mich 26, 31; 691 NW2d 759 (2005). A factual finding is clearly erroneous if it leaves the Court with a definite and firm conviction that the trial court made a mistake. *People v Akins*, 259 Mich App 545, 564; 675 NW2d 863 (2003).

## III. LEGALITY OF THE INVESTIGATIVE STOP

The prosecution argues that Officer Doxtader had a reasonable suspicion that criminal activity was afoot

when he stopped defendant's vehicle and that the investigative stop of the vehicle therefore did not violate the Fourth Amendment. In contrast, defendant argues that the mere purchase of methamphetamine precursors does not create a reasonable suspicion that criminal activity is afoot.

The stop of defendant's vehicle implicated defendant's right to be free from unreasonable searches and seizures. Both the United States and Michigan Constitutions guarantee protection against unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11; *People v Kazmierczak*, 461 Mich 411, 417; 605 NW2d 667 (2000). The Fourth Amendment search and seizure protections also apply to brief investigative detentions. See *People v Green*, 260 Mich App 392, 396; 677 NW2d 363 (2004), overruled on other grounds by *People v Anstey*, 476 Mich 436; 719 NW2d 579 (2006). However, in *Terry v Ohio*, 392 US 1, 30-31; 88 S Ct 1868; 20 L Ed 2d 889 (1968), the United States Supreme Court held that the Fourth Amendment permits a police officer to make a brief investigative stop (a *"Terry* stop") and detain a person if the officer has a reasonable, articulable suspicion that criminal activity is afoot. The police may also make a *Terry* stop and briefly detain a person who is in a motor vehicle if the officer has a reasonable, articulable suspicion that the person is engaged in criminal activity. *People v Oliver*, 464 Mich 184, 192; 627 NW2d 297 (2001).

In determining reasonableness, the court must consider whether the facts known to the officer at the time of the stop would warrant an officer of reasonable precaution to suspect criminal activity. *Terry*, 392 US at 21-22. "The reasonableness of an officer's suspicion is determined case by case on the basis of the totality of all the facts and circumstances." *People v LoCicero (After*

*Remand)*, 453 Mich 496, 501-502; 556 NW2d 498 (1996). "[I]n determining whether the totality of the circumstances provide reasonable suspicion to support an investigatory stop, those circumstances must be viewed 'as understood and interpreted by law enforcement officers, not legal scholars . . . .' " *Oliver*, 464 Mich at 192, quoting *People v Nelson*, 443 Mich 626, 632; 505 NW2d 266 (1993). An officer's conclusion must be drawn from reasonable inferences based on the facts in light of his training and experience. *Terry*, 392 US at 27. The United States Supreme Court has said that deference should be given to the experience of law enforcement officers and their assessments of criminal modes and patterns. *United States v Arvizu*, 534 US 266, 273-274; 122 S Ct 744; 151 L Ed 2d 740 (2002); see also *Oliver*, 464 Mich at 196, 200. Fewer foundational facts are necessary to support a finding of reasonableness when moving vehicles are involved than when a house or home is involved. *Oliver*, 464 Mich at 192.

Initially, we conclude that the trial court clearly erred when it found that Officer Doxtader had been informed that defendant purchased a single box of Sudafed. The evidence indicated that Officer Doxtader had been advised that defendant had purchased "packages" of Sudafed. The evidence also indicated that defendant purchased a gallon of Coleman fuel. Sudafed and Coleman fuel are both known methamphetamine precursors. This is not a case in which one person purchased only a quantity of Sudafed *or* only a gallon of fuel. Rather, defendant purchased "packages" of Sudafed together with a gallon of fuel. Because defendant was not a resident of the local area, the store pharmacist had alerted the loss-prevention officer of the purchase of the pills. The information regarding the purchase of the Sudafed and the Coleman fuel, as well as a description of defendant's vehicle, was provided to the police by

the loss-prevention officer who was trained to recognize methamphetamine precursors and had provided reliable information to the police in more than 10 previous methamphetamine investigations. Defendant's purchase of a combination of methamphetamine precursors from one store, when considered in totality with Officer Doxtader's training and experience with regard to the manufacturing of methamphetamine, formed a solid basis on which Officer Doxtader had a reasonable suspicion of criminal activity to justify the *Terry* stop. Thus, the trial court erred by granting defendant's motion to suppress the fruits of the vehicle search.

### IV. THE ROADSIDE STATEMENTS

The prosecution argues that the trial court erred by suppressing defendant's roadside statements on the ground that defendant had not been advised of his *Miranda* rights during the questioning. We review de novo the question whether defendant was in custody at the time he made the statements at issue. *People v Herndon*, 246 Mich App 371, 395; 633 NW2d 376 (2001).

*Miranda* warnings are not required unless the accused is subject to a custodial interrogation. *People v Hill*, 429 Mich 382, 385; 415 NW2d 193 (1987); *People v Vaughn*, 291 Mich App 183, 189; 804 NW2d 764 (2010). Generally, a custodial interrogation is a questioning initiated by law enforcement officers after the accused has been taken into custody or otherwise deprived of his or her freedom of action in any significant way. *Yarborough v Alvarado*, 541 US 652, 661; 124 S Ct 2140; 158 L Ed 2d 938 (2004); *People v Zahn*, 234 Mich App 438, 449; 594 NW2d 120 (1999). Whether an accused was in custody depends on the totality of the circumstances. The key question is whether the accused could have

reasonably believed that he or she was not free to leave. *Yarborough,* 541 US at 663; *Vaughn,* 291 Mich App at 189.

However, a motorist detained for a routine traffic stop or investigative stop is ordinarily not in custody within the meaning of *Miranda. Maryland v Shatzer,* 559 US ___, ___; 130 S Ct 1213, 1224; 175 L Ed 2d 1045 (2010); *Berkemer v McCarty,* 468 US 420, 440; 104 S Ct 3138; 82 L Ed 2d 317 (1984); *People v Burton,* 252 Mich App 130, 138-139; 651 NW2d 143 (2002). As was stated in *Berkemer,* this is because

> [t]wo features of an ordinary traffic stop mitigate the danger that a person questioned will be induced "to speak where he would not otherwise do so freely," *Miranda v. Arizona,* 384 U. S. [436, 467; 86 S Ct 1602; 16 L Ed 2d 694 (1966)]. First, detention of a motorist pursuant to a traffic stop is presumptively temporary and brief. The vast majority of roadside detentions last only a few minutes. A motorist's expectations, when he sees a policeman's light flashing behind him, are that he will be obliged to spend a short period of time answering questions and waiting while the officer checks his license and registration, that he may then be given a citation, but that in the end he most likely will be allowed to continue on his way. In this respect, questioning incident to an ordinary traffic stop is quite different from stationhouse interrogation, which frequently is prolonged, and in which the detainee often is aware that questioning will continue until he provides his interrogators the answers they seek. See *id.,* at 451.
>
> Second, circumstances associated with the typical traffic stop are not such that the motorist feels completely at the mercy of the police. To be sure, the aura of authority surrounding an armed, uniformed officer and the knowledge that the officer has some discretion in deciding whether to issue a citation, in combination, exert some pressure on the detainee to respond to questions. But other aspects of the situation substantially offset these forces. Perhaps most importantly, the typical traffic stop is public,

at least to some degree. Passersby, on foot or in other cars, witness the interaction of officer and motorist. This exposure to public view both reduces the ability of an unscrupulous policeman to use illegitimate means to elicit self-incriminating statements and diminishes the motorist's fear that, if he does not cooperate, he will be subjected to abuse. The fact that the detained motorist typically is confronted by only one or at most two policemen further mutes his sense of vulnerability. In short, the atmosphere surrounding an ordinary traffic stop is substantially less "police dominated" than that surrounding the kinds of interrogation at issue in *Miranda* itself, see 384 U. S., at 445, 491-498, and in the subsequent cases in which we have applied *Miranda*.

In both of these respects, the usual traffic stop is more analogous to a so-called *"Terry* stop," see *Terry v. Ohio*, 392 U. S. 1, (1968), than to a formal arrest. Under the Fourth Amendment, we have held, a policeman who lacks probable cause but whose "observations lead him reasonably to suspect" that a particular person has committed, is committing, or is about to commit a crime, may detain that person briefly in order to "investigate the circumstances that provoke suspicion." *United States v. Brignoni-Ponce*, 422 U. S. 873, 881 [95 S Ct 2574 45 L Ed 2d 607] (1975). "[T]he stop and inquiry must be 'reasonably related in scope to the justification for their initiation.' " *Ibid.* (quoting *Terry v. Ohio* [392 US] at 29.) Typically, this means that the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. But the detainee is not obliged to respond. And, unless the detainee's answers provide the officer with probable cause to arrest him, he must then be released. The comparatively nonthreatening character of detentions of this sort explains the absence of any suggestion in our opinions that *Terry* stops are subject to the dictates of *Miranda*. The similarly noncoercive aspect of ordinary traffic stops prompts us to hold that persons temporarily detained pursuant to such stops are not "in custody" for the purposes of *Miranda*. [*Berkemer*, 468 US at 437-440 (citations omitted).]

Both defendant and the trial court improperly considered this case to be one involving a custodial interrogation requiring *Miranda* protections. Given the circumstances that justified the *Terry* stop, Officer Doxtader was permitted to temporarily detain defendant and make a reasonable inquiry into possible criminal activity. The officer's questions were asked immediately after the stop, were minimal in number, and were posed in an attempt to gather information confirming or dispelling the officer's suspicions. Defendant voluntarily answered the officer's questions regarding the presence of controlled substances in the vehicle and his use of methamphetamine. Officer Doxtader's brief questioning was within the scope of the stop and confirmed the officer's suspicions concerning the presence of a controlled substance without subjecting defendant to a custodial interrogation. Consequently, the trial court erred by suppressing defendant's roadside statement.

### V. THE STATEMENTS AT THE POLICE DEPARTMENT

Lastly, the prosecution challenges the trial court's ruling that defendant's statements made at the police station during a custodial interrogation and after he was advised of and waived his *Miranda* rights must be suppressed as the fruit of an illegal roadside interrogation.

As discussed in part IV, Officer Doxtader was not required to advise defendant of his *Miranda* rights at the time of the roadside questioning because defendant was not in custody for purposes of *Miranda*. Consequently, the trial court's holding that defendant's second set of statements was subject to suppression because of the taint of his earlier, illegally obtained statements was erroneous.

Even assuming that defendant's first roadside statements were illegally obtained in violation of *Miranda*, defendant's second set of statements at the police department was lawfully obtained. The second confession was given approximately 45 minutes after the first confession, in an interrogation room at the police department after defendant had been advised of and waived his *Miranda* rights. There is no indication in the record that the second confession was obtained illegally or involuntarily. The subsequent giving of *Miranda* warnings removed any taint given that a reasonable person in defendant's shoes " 'could have seen the station house questioning as a new and distinct experience,' and 'the *Miranda* warnings could have made sense as presenting a genuine choice whether to follow up on the earlier admission.' " *Coomer v Yukins*, 533 F3d 477, 491 (CA 6, 2008), quoting *Missouri v Seibert*, 542 US 600, 616; 124 S Ct 2601; 159 L Ed 2d 643 (2004). The trial court erred by suppressing defendant's statements given at the police station.

Reversed and remanded for further proceedings. Jurisdiction is not retained.

O'CONNELL and METER, JJ., concurred with FITZGERALD, P.J.