# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

WALTER PATRICK JONES,

      Defendant-Appellant.

UNPUBLISHED
September 13, 2018

No. 338472
Jackson Circuit Court
LC No. 16-005194-FH

Before: METER, P.J., and K. F. KELLY and GLEICHER, JJ.

PER CURIAM.

A jury convicted defendant of operating a motor vehicle while intoxicated, third offense, MCL 257.625(1) (OWI), and driving while license suspended, MCL 257.904(1) (DWLS). Defendant contends that his OWI conviction was improperly based on inculpatory statements to the arresting officer that should have been suppressed and that the court erroneously scored various offense variables when imposing his OWI sentence. We affirm defendant's convictions, but vacate his OWI sentence and remand for resentencing as a scoring error artificially inflated defendant's OV level.

## I. BACKGROUND

At approximately 4:20 p.m. on March 30, 2016, two motorists noticed defendant driving erratically on US-127. David Schuen chose to hang back and block other vehicles from approaching too near defendant while he contacted 911. Todd Bingham chose to speed up to get ahead of and avoid defendant. Both men observed defendant for several miles as he repeatedly drifted out of his travel lane, weaved across both lanes of the highway (and onto the shoulder), swerved in front of other vehicles, and varied his speed between 60 and 90 miles per hour. Ultimately, Bingham was unable to outrun defendant because of slowing traffic in front of him. Defendant struck Bingham from behind and pushed him into the left-hand guardrail. Bingham was not injured in this collision. Defendant's vehicle spun out of control, crossed the grassy median dividing the highway, skidded across two lanes of traffic on the other side of the highway, and struck the guardrail. In the process, defendant's vehicle missed striking a vehicle driven by Casey Hansen by only a few feet.

When defendant's vehicle came to rest, Schuen, Bingham, and Hansen parked and gathered around defendant's SUV. The trio noted that defendant was alone in the vehicle and sitting in the driver's seat. Schuen described that defendant was trying to restart his car, stating,

-1-

"I have to go, I have to go." Schuen attempted to take defendant's keys and restrained him when he tried to get out of the car. Hansen watched as Schuen attempted to take defendant's keys and personally held the car door closed to prevent defendant from leaving on foot. By the time Bingham approached defendant's vehicle, defendant had calmed down and was leaning back in his seat, almost asleep. Bingham testified that defendant asked in a slurred voice if he had hit anyone. Schuen, Bingham, and Hansen all noted the smell of alcohol coming from defendant, as well as his slurred speech and lethargy. Hansen asked defendant how much he had to drink and he responded "two fifths."

Michigan State Police Trooper Daniel Obarski was the first responder on the scene. When Obarski approached the SUV, defendant opened the driver's side door. Obarski asked defendant what had occurred and defendant "said he was being an idiot" and "[c]lipped a guy." The trooper smelled alcohol on defendant's breath and noted his slurred, lethargic answers to questions. Obarski further observed that defendant's eyes were red and glassy. Trooper Obarski asked defendant if he had been drinking and if so how much. Defendant answered in the affirmative and said he drank "quarts." After further questions, defendant indicated that he drank three quarts.

The trooper had to help defendant from the vehicle and assisted him to walk to the guardrail, where he sat down. The trooper asked to see defendant's driver's license and defendant initially lied about having one. Obarski's computer search revealed that defendant had not had a valid license since 1978. Defendant admitted that he should not have been driving because he had too much to drink that day. Defendant agreed to do field sobriety tests, but then said he would be unable to do them. He also refused a preliminary breath test, stating "Just put me in cuffs."

Trooper Obarski complied with defendant's request and placed him in handcuffs. The trooper led defendant to the police vehicle where he assisted him into the front passenger seat. At the jail, Obarski read defendant his chemical test rights and administered two Datamaster tests, both recording a 0.20, 2½ times the legal limit.

## II. SUPPRESSION OF STATEMENTS TO POLICE

Before trial, defendant filed a motion to suppress the incriminating statements he made to Trooper Obarski at the accident scene. Defendant argued that he was in custody when he made the statements in response to Obarski's questions but that Obarski had not read him the *Miranda* rights.[1] "In considering a trial court's ruling on a motion to suppress, we review its factual findings for clear error and its interpretation of the law de novo." *People v Dunbar*, 499 Mich 60, 66; 879 NW2d 229 (2016). In this case, the trial court correctly determined that Trooper Obarski did not subject defendant to custodial interrogation and therefore was not required to advise defendant of his rights.

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

> *Miranda* warnings are not required unless the accused is subject to a custodial interrogation. Generally, a custodial interrogation is a questioning initiated by law enforcement officers after the accused has been taken into custody or otherwise deprived of his or her freedom of action in any significant way. Whether an accused was in custody depends on the totality of the circumstances. The key question is whether the accused could have reasonably believed that he or she was not free to leave. [*People v Steele*, 292 Mich App 308, 316; 806 NW2d 753 (2011) (citations omitted).]

"[A] police officer may ask general on-the-scene questions to investigate the facts surrounding [a] crime without implicating the holding in *Miranda*." *People v Ish*, 252 Mich App 115, 118; 652 NW2d 257 (2002). Upon arriving at an accident scene, an officer may ask the driver a series of questions to determine what occurred and even ask the driver to perform field sobriety tests without taking the driver into custody. See *Berkemer v McCarty*, 468 US 420, 441-442; 104 S Ct 3138; 82 L Ed 2d 317 (1984). Investigating a motor vehicle accident scene is akin to conducting a routine traffic stop, an activity that "ordinarily" does not equate with placing the driver in custody. *Steele*, 292 Mich App at 317. Rather, traffic stops and investigations immediately following an accident are analogous to a *Terry*[2] stop, during which a police officer may ask "a moderate number of questions to determine [the individual's] identity and to try to obtain information confirming or dispelling the officer's suspicions," without triggering the application of *Miranda*. *Id*. at 318.

Upon first encountering defendant, Trooper Obarski observed several telltale signs that defendant was intoxicated. The trooper asked defendant what happened and defendant indicated that he had been an "idiot." The trooper followed up by asking whether defendant was an "idiot" for drinking and driving that day. Defendant responded in the affirmative. Defendant proceeded to make several more incriminating statements as Trooper Obarski helped him out of the SUV and to the guardrail. Defendant admitted that he hit another vehicle because he was drunk. These questions and answers were posed during the investigatory stop while defendant was not in custody.

Defendant ended the investigative stop by asking Trooper Obarski to place him in handcuffs. This act transformed the situation into a custodial interrogation. Obarski did not testify about any statement defendant made after he was placed in handcuffs. Accordingly, there were no statements subject to suppression at trial. The trial court committed no error in admitting defendant's precustodial statements against him at trial.

## III. SCORING OF OFFENSE VARIABLES

Defendant also challenges his within-guidelines sentence for OWI of 76 to 240 months, contending that the trial court erred in scoring several OVs. Defendant failed to preserve his challenges by objecting at sentencing or raising his challenges in a motion for resentencing or

---

[2] *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968).

remand for resentencing. *People v Kimble*, 470 Mich 305; 310-311; 684 NW2d 669 (2004); *People v Sours*, 315 Mich App 346, 348; 890 NW2d 401 (2016).[3]

This Court recently described our standard of review in scoring challenge cases as follows:

> In reviewing a trial court's calculation of a defendant's sentencing guidelines score, this Court reviews factual determinations for clear error, and factual determinations must be supported by a preponderance of the evidence. "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." To the extent that this issue is unpreserved, our review is limited to plain error affecting substantial rights. "To establish entitlement to relief under plain-error review, the defendant must establish that an error occurred, that the error was plain, i.e., clear or obvious, and that the plain error affected substantial rights." [*People v Anderson*, 322 Mich App 622, 634-635; 912 NW2d 607 (2018) (citations omitted).]

Defendant challenges his five-point score for OV 3, and the prosecutor concedes that this score was assessed in error. MCL 777.33(1)(e) provides for the assessment of five points when the defendant inflicts bodily injury that does not require medical treatment upon a victim. For purposes of scoring OV 3, the term "victim" is not restricted to the victim of the charged offense, but "includes any person harmed by the criminal actions of the charged party." *People v Laidler*, 491 Mich 339, 349; 817 NW2d 517 (2012), quoting *People v Albers*, 258 Mich App 578, 593; 672 NW2d 336 (2003). Even with this broad definition of victim, the court's score is unsupportable. No one was injured as a result of defendant's intoxicated driving. Although Bingham collided with the guardrail, he specifically testified that he was not injured in any way. Accordingly, the court should not have scored OV 3.

Defendant is entitled to relief as a result of this error. Defendant's total OV score was 50 points, placing him in OV Level V. With a prior record variable score of 50 points placing him in PRV E, defendant's minimum sentencing guidelines range as a fourth habitual offender was 19 to 76 months. MCL 777.21(3)(c). Subtracting five points from defendant's total OV score reduces his OV Level to IV, with a reduced minimum sentencing guidelines range of 14 to 58 months. Defendant's minimum sentence is outside this corrected range, establishing that he was prejudiced by the error. Accordingly, defendant is entitled to resentencing.

Defendant raises several additional challenges to the scoring of his OVs, none of which bear merit. Defendant challenges the assessment of 10 points for OV 9, reflecting that

---

[3] Within his argument, defendant contends that his trial counsel was ineffective for failing to preserve his sentencing challenges. This issue was not properly presented in the statement of questions presented and we decline to consider it. See *People v McMiller*, 202 Mich App 82, 83 n 1; 507 NW2d 812 (1993).

defendant's offense placed "2 to 9 victims . . . in danger of physical injury or death." MCL 777.39(1)(c). Defendant contends that as he only collided with Bingham, Bingham alone was placed in such danger. Defendant ignores evidence that he spun out at a high rate of speed and missed colliding with Hansen, who was travelling at more than 70 miles per hour, by mere feet. This close encounter clearly placed Hansen in danger of physical injury or death and supported the trial court's score.

On appeal, the prosecutor contends that the court should have scored OV 9 at 25 points, reflecting that "10 or more victims" were placed in grave danger as defendant drove along the highway during rush hour. Correcting this error would negate the error in scoring five points for OV 3 and eliminate the need for resentencing, the prosecutor emphasizes. However, the prosecutor specifically requested the 10-point score at sentencing and only changed position on appeal after recognizing and acknowledging the error in scoring OV 3. Allowing the prosecutor to suddenly advocate a position not taken in the trial court would amount to allowing the state to harbor error as an appellate parachute. See *People v Barclay*, 208 Mich App 670, 673; 528 NW2d 842 (1995). We reject this attempt.

Defendant further challenges his 20-point score for OV 18, reflecting that defendant drove with a "bodily alcohol content" of 0.20 grams or more. MCL 777.48(1)(a). The evidence clearly supports that defendant's BAC was 0.20. However, defendant notes that the jury did not make a finding of fact as to his BAC as the prosecutor amended the complaint just before trial to try defendant for driving "while under the influence of alcohol" rather than driving "while having an alcohol content of 0.08 grams or more." However, the trial court was permitted to find this fact at sentencing based on the evidence placed on the record at trial. See *People v Biddles*, 316 Mich App 148, 158-159; 896 NW2d 461 (2016). Accordingly, defendant is not entitled to relief on this ground.

Finally, defendant challenges the court's assignment of 10 points for OV 19. MCL 777.49(c) provides for a 10-point score when the defendant "otherwise interfered with or attempted to interfere with the administration of justice." The phrase "interfere with the administration of justice" for purposes of OV 19 means "to oppose so as to hamper, hinder, or obstruct the act or process of administering judgment of individuals or causes by judicial process." *People v Hershey*, 303 Mich App 330, 343; 844 NW2d 127 (2013). "OV 19 is generally scored for conduct that constitutes an attempt to avoid being caught and held accountable for the sentencing offense." *Sours*, 315 Mich App at 349.

Schuen and Hansen testified that defendant attempted to leave the scene after the accident. Defendant tried to restart his vehicle and Schuen had to hold defendant back against the seat and try to take his key out of the ignition. Defendant then tried to exit the vehicle, presumably to flee on foot, and Hansen had to lean against the door to hold it closed. Defendant repeatedly indicated that he had "to go," precluding any chance that Schuen and Hansen misunderstood his actions. This evidence supported that defendant attempted to avoid capture and merited a 10-point score for OV 19.

Further, Schuen testified that defendant reached in the backseat and tried to hide a liquor bottle. None of the other witnesses observed this activity. However, if believed by the court, this conduct would also support defendant's score for OV 19. See *People v Ericksen*, 288 Mich

App 192, 204; 793 NW2d 120 (2010) (holding that "defendant's attempt to hide or dispose of the weapon in conjunction with his encouragement of others to lie about where he was at the time of the stabbing was a multifaceted attempt to create a false alibi and mislead the police," supporting the scoring of OV 19).

We affirm defendant's convictions, but vacate his sentence for OWI and remand for resentencing for that offense. We do not retain jurisdiction.

/s/ Patrick M. Meter
/s/ Kirsten Frank Kelly
/s/ Elizabeth L. Gleicher