*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

PHILIP EARL POTTER,

        Defendant-Appellant.

UNPUBLISHED
June 22, 2023

No. 360137
Berrien Circuit Court
LC No. 2020-015862-FC

Before: GLEICHER, C.J., and RICK and MALDONADO, JJ.

PER CURIAM.

A jury convicted Philip Earl Potter of five counts of first-degree criminal sexual conduct
(CSC-I) for sexually abusing his granddaughter when she was between the ages of six and 10.
Potter challenges the admission of a video recording of his police interview. We discern no error
and affirm.

## I. BACKGROUND

In 2020, Potter's 15-year-old granddaughter reported to her parents that Potter had sexually
abused her on several occasions when she was between the ages of six and 10. Relevant to this
appeal, Potter voluntarily came to the police station to answer questions regarding the victim's
allegations. A redacted version of the interview was played for the jury over Potter's motion to
suppress.

The video begins with two officers and an unidentified third man[1] entering a room where
Potter is sitting at a table. One of the officers informs Potter that he is not under arrest or in
custody, that he can leave at any time, and that he is not required to answer any questions. The
officer advises Potter that while the victim described a pattern of repeated abuse, she identified
four specific instances with greater detail. After an officer describes the first allegation, Potter
replies, "Okay? No comment." The officer clarifies that Potter is neither admitting nor denying

---

[1] Potter later asks for the man's identity and he reveals that he works for Child Protective Services.

the allegation and Potter states, "Just no comment." As to the second allegation, Potter states, "That's an interesting one. No comment." The officer again clarifies that Potter is neither admitting nor denying the accusation and Potter again asserts, "Just no comment." After hearing a description of the third instance, Potter replies, "Interesting. No comment." As to the fourth, Potter merely states, "No comment."

An officer asks Potter about his relationship with the victim. He responds, "I thought it was a good one." When asked how often he sees his granddaughter, Potter describes that he saw her often "early on," but later it was only when he "was allowed over" to his daughter's house. The officer directly asks Potter if he had sex with the victim, and Potter again states, "No comment."

The officers then explore Potter's decision to respond, "No comment," instead of denying the accusations. Potter replies that it "just gets into he said/she said, you called me a liar, it doesn't matter to me." One officer indicates that he would be angry if someone accused him of sexual assault. Potter replies that he "was pretty upset at first." Potter informs the officers that he will plead not guilty at trial "I can tell you that right now," and "that covers all of it," meaning all the accusations. An officer informs Potter that he "could clear it all up now," and Potter states, "With what?" The officer follows up, "You could make an admission." Potter retorts, "There's nothing to admit. That's why it's no comment." When asked why he simply did not deny the allegations, Potter asserts, "That doesn't clear anything up." He expresses frustration that the accusation will follow him regardless of how the trial resolves. Potter notes that he could already see in the officers' faces that they believed the allegations. Potter concludes, "I don't know what to say or what to do. I already said not guilty. What else is there to say?"

The jury ultimately convicted Potter of five counts of CSC-I. Potter appeals.

## II. ANALYSIS

Potter contends that his entire statement should have been suppressed because this was a custodial interview and the officers did not advise him of his *Miranda*[2] rights. Potter preserved his challenge by filing a pretrial motion to suppress his statement. *People v Henry (After Remand)*, 305 Mich App 127, 144; 854 NW2d 114 (2014).

"Statements of an accused made during custodial interrogation are inadmissible unless the accused voluntarily, knowingly, and intelligently waived his or her Fifth Amendment rights." *Id.* "*Miranda* warnings are not required unless the accused is subject to a custodial interrogation." *People v Steele*, 292 Mich App 308, 316; 806 NW2d 753, 758 (2011). "Generally, a custodial interrogation is a questioning initiated by law enforcement officers after the accused has been taken into custody or otherwise deprived of his or her freedom of action in any significant way." *Id.*, citing *Yarborough v Alvarado*, 541 US 652, 661; 124 S Ct 2140; 158 L Ed 2d 938 (2004). "The key question" in determining whether a custodial interrogation took place "is whether the accused could have reasonably believed that he or she was not free to leave." *Steele*, 292 Mich App at 316. This determination "depends on the objective circumstances of the interrogation, not on the

---

[2] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

subjective views harbored by either the interrogating officers or the person being questioned." *Stansbury v California*, 511 US 318, 323; 114 S Ct 1526; 128 L Ed 2d 293 (1994).

Here, the officers asked Potter if he was willing to come to the station to discuss the victim's accusations. Potter voluntarily appeared. When the officers entered the room, Potter was already seated at the table. There is no record indication that Potter was directed to sit at the end of the table farthest from the door. Accordingly, Potter cannot support his claim that the officers intentionally blocked him in the room. Potter claims that he felt unable to leave because he had to travel through locked or secured doors to reach the interrogation room. That is true of many secure government buildings, however. And there is no indication that the interrogation room's door locked when the officers shut it. Most importantly, at the onset of the interview, an officer advised Potter that he was not under arrest or in custody, he could leave at any time, and he was not required to answer any questions. Potter never asked to leave and opted not to answer many questions. This was not a custodial interrogation and the officers were not required to read Potter his rights.

Potter further contends that even if he was not in custody when interviewed by the police, his statements to the officers should have been excluded because they were irrelevant and prejudicial.

In his appellate brief, Potter cites specific statements made during the interrogation that should have been excluded:

> It was misleading to the jury, delving improperly into prior investigations that resulted in nothing, and eliciting Mr. Potter's views on his children's household and the financial consequences of the prosecutor's office of bringing prosecutions . . .

> The interview began with a discussion of prior investigations by CPS that occurred at an unspecified time in the past. . . .

These portions of Potter's statement to the police were redacted from the video played to the jury. Accordingly, Potter's challenge in this regard is completely unfounded. Potter could not have been prejudiced by statements that were never played for the jury.

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Michelle M. Rick
/s/ Allie Greenleaf Maldonado