*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TYLER THOMAS DELONG,

        Defendant-Appellant.

UNPUBLISHED
December 28, 2023

No. 362322
Chippewa Circuit Court
LC No. 20-004047-FC

Before: BORRELLO, P.J., and SWARTZLE and PATEL, JJ.

PER CURIAM.

Defendant prevented a woman from leaving her house after sexually assaulting her, and he also stabbed a man in the head with a knife when that man tried to intervene. A jury convicted defendant of assault with the intent to murder, first-degree criminal sexual conduct, and unlawful imprisonment. We affirm defendant's convictions, and remand solely for the trial court to correct a clerical error in defendant's judgment of sentence.

After defendant was bound over on his charges, he submitted an interlocutory appeal that was granted by this Court. *People v Delong*, unpublished order of the Court of Appeals, entered September 15, 2020 (Docket No. 353687). At that time, defendant argued that the trial court had erred by denying his motion to quash his charges. This Court affirmed the trial court's decision, and provided the relevant factual background.

> On August 2, 2019, at approximately 3:20 a.m., officers responded to a call for a reported assault. The responding officer found [the male victim] bleeding heavily from his face with [the female victim] steadying him. [The female victim] explained that defendant, who had been staying with her for a few days, had been acting strangely and would not let her leave her house. She described that when she texted [the male victim] for help, defendant became angry, raped her, and began beating her. She explained that [the male victim] broke down the door and pepper sprayed defendant, and that defendant attacked him with a knife, stabbed him, and strangled him. [Both the male and female victims] were taken to the hospital for treatment. Officers made contact with defendant, who was waiting outside the

-1-

residence. Defendant explained in detail that he sexually assaulted [the female victim], beat her, and fought [the male victim]. He explained that he aimed for [the male victim's] intestines and kidneys with the knife, and said that his only thought at the time was to kill [the male victim]. [*People v Delong*, unpublished per curiam opinion of the Court of Appeals, issued February 11, 2021 (Docket No. 353687), p 1.]

The officers that initially made contact with defendant were recording the encounter with their body cameras. That body camera footage revealed that defendant was waiting for the officers to arrive, and he asked the officers if he needed to get on the ground. The officers told him "no" and instead instructed him to sit back down. Defendant asked the officers to check him for weapons, at which point the officers told him to interlock his fingers on his head while they conducted a physical search for any weapons. Defendant then asked for soap and water to wash the male victim's blood off of his arm, and the officers told him that he was not permitted to do that. The officers asked defendant what happened, and defendant explained in detail that he sexually assaulted the female victim, beat her, and prevented her from leaving the house. Defendant also described how he fought the male victim with a knife and stabbed him repeatedly in the intestines and kidneys while thinking that he wanted to kill him. The officers questioned defendant for 17 minutes before reading defendant his *Miranda* rights. Within one minute after being read his *Miranda* rights, defendant continued to confess to the crimes that he had committed.

Defendant moved to suppress his statements from being introduced as evidence. The trial court held that defendant was not in custody for the first 17 minutes of the encounter, and, thus, *Missouri v Seibert*, 542 US 600; 124 S Ct 26-1; 159 L Ed 2d 643 (2004) was not applicable to the situation. Further, the trial court found that defendant was providing his statements voluntarily after being read his *Miranda* rights, and those statements were also admissible. The trial court suppressed six minutes of the encounter that related to when defendant intimated that he may be arrested, before he was read his *Miranda* rights.

During the trial, the female victim testified that she rebuffed defendant's sexual advances before defendant pushed her into a wall, slammed her onto a bed, and pinned her down to assault her sexually after forcibly removing her tampon. She then texted the male victim for help and attempted to leave the home. Defendant locked the front door and blocked her from leaving. She testified that it was at this point that defendant started to punch and kick her repeatedly.

The male victim testified that he went to the female victim's house after he received several text messages from her, and defendant stabbed him in the head after he kicked in the door. The male victim also stated that he felt sharp pains in his arm as he continued to fight with defendant in an attempt to get the female victim free from the house.

The nurse that examined the female victim at the hospital testified that she had injuries to her arms, back, and feet from being thrown around and kicked. The Emergency Room Physician that treated the male victim at the hospital testified that he had several lacerations on his body, and a medical scan revealed that a knife blade was embedded in his skull.

A forensic scientist performed DNA testing on the tampon that was found in a garbage can that was in the female victim's room, and the forensic scientist testified that the semen samples on

-2-

the tampon matched defendant's DNA. Further, the DNA from the knife blade in the male victim's skull matched the DNA on a bloodstain that was found on defendant's chest.

Several police officers also testified. This included the officers who interviewed defendant both before, and after, he was read his *Miranda* rights. During the testimony regarding the statements that defendant made to the officers, the prosecutor played the body-camera footage for the jury.

Defendant was convicted as stated above. During sentencing, the trial court held that it would sentence defendant to concurrent sentences for his convictions. The judgment of sentence, however, states that defendant's sentences are to be served consecutively.

Defendant now argues on appeal that the trial court erred by not suppressing his statements to the police officers.

This Court reviews de novo a trial court's decision on a motion to suppress. *People v Hyde*, 285 Mich App 428, 436; 775 NW2d 833 (2009). It also reviews de novo questions of constitutional law. *People v Sadows*, 283 Mich App 65, 67; 768 NW2d 93 (2009). A trial court's findings of fact are reviewed for clear error. *Hyde*, 285 Mich App at 436. "A finding is clearly erroneous if, after reviewing the entire record, this Court is definitely and firmly convinced that the trial court made a mistake." *People v Swenor*, 336 Mich App 550, 563-564; 971 NW2d 33 (2021).

"*Miranda* warnings are not required unless the accused is subject to a custodial interrogation." *People v Steele*, 292 Mich App 308, 316; 806 NW2d 753 (2011). "Generally, a custodial interrogation is a questioning initiated by law enforcement officers after the accused has been taken into custody or otherwise deprived of his or her freedom of action in any significant way." *Id*. In this case, the officers ordered defendant to sit down and told him that he was not free to wash the blood off of his arm. Defendant's actions made it clear that he did not think that he was free to leave, as he also asked the officers to search him for weapons.

Even though the police first questioned defendant without advising him of his *Miranda* rights, that presumed error does not necessarily bar the use of subsequent inculpatory statements made by defendant after he had been advised of his rights. The law regarding the admissibility of statements that are made, after inadmissible statements are made and a subsequent advisement of *Miranda* rights is given, is, however, unsettled in this state. See *People v Delatorre*, unpublished per curiam opinion of the Court of Appeals, issued January 26, 2023 (Docket No. 359394).

Assuming without deciding that it was error to admit any of the recorded statements, the error was harmless when considering the overwhelming evidence that was presented at trial. A preserved constitutional error is harmless if it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *Hyde*, 285 Mich App at 447 (cleaned up). "There must be no reasonable possibility that the evidence complained of might have contributed to the conviction." *Id*. (cleaned up).

Both victims clearly and unequivocally identified defendant as the person that attacked them, and they each explained that they knew defendant before this incident. The female victim testified that defendant sexually assaulted her and prevented her from leaving the house, and the male victim testified that defendant attacked him, even stabbing him in the head. Their testimony

was corroborated by the DNA evidence that was retrieved from the tampon as well as the DNA evidence that was retrieved from the knife blade that was lodged in the male victim's head. Based on all of the nonvideo evidence presented at trial, it is clear beyond a reasonable doubt that a rational jury would have found defendant guilty of assault with intent to murder, first-degree criminal sexual conduct, and unlawful imprisonment, without defendant's recorded statements being admitted. Because this alleged error is harmless, defendant is not entitled to a new trial.

Lastly, this Court discovered on its own initiative that there is a clerical error in defendant's judgment of sentence. During sentencing, the trial court held that defendant's sentences would run concurrently and not consecutively. Defendant's judgment of sentence, however, notes that defendant's sentence will run consecutively. Accordingly, we remand this case to the trial court with instructions to amend the judgment of sentence to reflect defendant's correct sentence.

Affirmed, and this case is remanded solely for the trial court to correct a clerical error in defendant's judgment of sentence.

/s/ Stephen L. Borrello
/s/ Brock A. Swartzle
/s/ Sima G. Patel