*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* MICHELLE JOHNSON, Minor.

---

PEOPLE OF THE STATE OF MICHIGAN,

        Petitioner-Appellee,

v

MICHELLE JOHNSON,

        Respondent-Appellant.

UNPUBLISHED
April 21, 2026
9:46 AM

No. 373450
Iron Circuit Court
Juvenile Division
LC No. 22-000032-DL

---

Before: GADOLA, C.J., and MURRAY and M. J. KELLY, JJ.

PER CURIAM.

Respondent, Michelle Johnson, appeals as of right her jury-trial conviction of third-degree retail fraud, MCL 750.356d(4). At issue is whether her defense lawyer provided ineffective assistance by failing to move to suppress inculpatory statements that she made prior to and after she was handcuffed. It is undisputed that Johnson, who was not first given her *Miranda*[1] warnings, made the statements in response to police questioning. For the reasons stated in this opinion, we conclude that Johnson's lawyer provided constitutionally deficient assistance by not moving to suppress the statements. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

## I. BASIC FACTS

On June 12, 2022, two police officers passed a local grocery store in a marked police vehicle. One of the officers noted that there were three juveniles in front of the store and that the female juvenile, i.e. Johnson, appeared to have a can of "beer" or some other alcoholic beverage. The officer advised his partner, who turned their vehicle around so that they could investigate

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

further. In response, the juveniles ran away. One of the officers exited the police vehicle and pursued them on foot. The juveniles fled to the back of a real estate office that was adjacent to the grocery store. They could not keep running, however, because the area was fenced in.

The officer who had pursued them smelled intoxicants on the juveniles. When his partner caught up, they separated the juveniles and interviewed them separately. One officer questioned Johnson, while the other led her boyfriend away in handcuffs. While Johnson was being questioned, the first police officer returned. He stated that Johnson's boyfriend had run because he was drinking. He then picked up her water bottle, opened it, and sniffed the contents. When Johnson stated that her boyfriend had not been drinking, the officer interjected to say that her boyfriend had confessed to drinking alcohol and that he could also smell alcohol on him. The officer told her that "unlike [Johnson], [her boyfriend's] not a liar." The second officer continued to question Johnson while the first walked away.

When the first officer returned, he stated that he had located several cans of alcoholic beverages where the juveniles had been originally standing. He noted that they were still "cold" and demanded that Johnson "not lie." He then asked her whether she had stolen the alcohol. She stated that she had. The other officer than placed Johnson in handcuffs. He asked her why she had stolen the alcohol. She explained that she did it because that was the way to get "drunk."

Prior to trial, Johnson's lawyer and the prosecution agreed that approximately 5 and a half minutes of the "body camera" showing Johnson's police interrogation could be played for the jury. Both Johnson's admission that she had stolen the alcohol and her explanation that the reason for the theft was so that she could get drunk were included in the portion played for the jury. Johnson then testified that she had lied when she admitted to stealing the alcohol. She stated that her boyfriend had stolen it and that she only admitted to doing so because he had a criminal record and she was trying to protect him from additional legal trouble. The jury found Johnson guilty of third-degree retail fraud.

Subsequently, Johnson moved for a new trial on the grounds that her defense lawyer was ineffective for failing to move to suppress, or to object to, the evidence of respondent's statements to the police. The trial court denied the motion for a new trial. The court reasoned that Johnson's admission that she had stolen the alcohol was made during a valid *Terry*[2] stop and therefore was not subject to *Miranda*. The court also reasoned that her statements after being handcuffed was improperly admitted, but that the error was harmless in light of the properly admitted evidence. This appeal follows.

---

[2] *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968).

## II. INEFFECTIVE ASSISTANCE

### A. STANDARD OF REVIEW

Johnson argues that her trial lawyer provided ineffective assistance by failing to move to suppress her statements to the police. "When no *Ginther*[3] hearing has been conducted, our review of the defendant's claim of ineffective assistance of counsel is limited to mistakes that are apparent on the record." *People v Mack*, 265 Mich App 122, 125; 695 NW2d 342 (2005).

### B. ANALYSIS

Although juvenile delinquency proceedings are not criminal in nature, MCL 712A.1(2), a juvenile in such a proceeding is nevertheless afforded the right to counsel. *In re Carey*, 241 Mich App 222, 227; 615 NW2d 742 (2000); see also MCR 3.915(A)(1). A defense lawyer provides ineffective assistance when his or her performance is deficient, i.e., when it falls below an objective standard of reasonableness, and when that deficient performance causes prejudice, i.e., when there is a reasonable probability that, but for the deficient performance, the outcome of the proceedings would have been different. *People v Yeager*, 511 Mich 478, 488; 999 NW2d 490 (2023). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (quotation marks and citation omitted).

Johnson argues that her lawyer's performance was deficient because he did not move to suppress the statements that she had made to the police without being given of her *Miranda* warnings. A *Miranda* warning is required when the accused is subject to a "custodial" interrogation. *People v Coomer*, 245 Mich App 206, 219; 627 NW2d 612 (2001). "Generally, a custodial interrogation is a questioning initiated by law enforcement officers after the accused has been taken into custody or otherwise deprived of his or her freedom of action in any significant way." *People v Steele*, 292 Mich App 308, 316; 806 NW2d 753 (2011). As recently explained in *People v Lewinski*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 365350); slip op at 4:

> " '[C]ustody' is a term of art that specifies circumstances that are thought generally to present a serious danger of coercion." *People v Elliott*, 494 Mich 292, 307; 833 NW2d 284 (2013) (quotation marks and citation omitted). The determination whether a person is considered to be "in-custody" with respect to an interrogation is a two-part inquiry, focusing on the freedom of movement and the environment. The first step is to "ascertain whether, in light of the objective circumstances of the interrogation, a reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave." *Id*. (quotation marks and citation omitted). Further, "in order to determine how a suspect would have gauged his or her freedom of movement, courts must examine all of the circumstances surrounding the interrogation." [*People v*] *Barritt*, 325 Mich App [556,] 562[; 926 NW2d 811 (2018)] (quotation marks, brackets, ellipses, and citation omitted). The relevant factors to consider include: "(1) the location of the

---

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

questioning, (2) the duration of the questioning, (3) statements made during the interview, (4) the presence or absence of physical restraints during the questioning, and (5) the release of the interviewee at the end of the questioning." *Id*. at 562-563 (citations omitted). "[N]o one circumstance is controlling; rather, a reviewing Court must consider the totality of the circumstances when deciding whether an individual was subjected to custodial interrogation under *Miranda*." *Id*. at 563.

In this case, Johnson made two inculpatory statements during the police interrogation. First, she admitted that she had stolen several cans of alcohol. Second, after being handcuffed, she explained that she stole the alcohol so that she could get drunk. The trial court determined that the second statement was made during a custodial interrogation but that the first was made during a valid *Terry* stop. We agree, in part.

Police officers are permitted to make a *Terry* stop "and detain a person if the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Steele*, 292 Mich App at 314. During a *Terry* stop, officers may "temporarily detain" a suspect and make "reasonable" inquiries into possible criminal activity. *Id*. at 319. Here, one of the officers observed three juveniles in front of a grocery store and noted that one of the juveniles appeared to be consuming alcohol. Given these circumstances, the officers had a reasonable, articulable suspicion that the juveniles were engaged in criminal activity, so there were grounds to make a *Terry* stop.

We conclude that the trial court erred, however, by concluding that because there was a valid *Terry* stop, the police interrogation was automatically noncustodial up until the point where she was handcuffed. "*Terry* stops are limited in both scope and duration." *Johnson v VanderKooi*, 509 Mich 524, 539; 983 NW2d 779 (2022). "The scope of the search must be strictly tied to and justified by the circumstances which rendered its initiation permissible." *Id*. For example, if there "is reason to believe that an individual is armed and dangerous," a search for weapons is permissible. *Id*. at 539-540. The duration of the *Terry* stop is also limited and should not be "prolonged beyond the time reasonably required to complete the stop's mission[.]" *Id*. That is, the duration of the stop may not be "longer than necessary to address the reasons justifying the stop." *Id*. at 540. Likewise, although reasonable inquiries are permitted during a *Terry* stop, questioning during a stop still requires a *Miranda* warning if the interrogation is custodial. *Steele*, 292 Mich App 316 (considering whether a motorist was in custody for purposes of a *Miranda* warning when he was detained and questioned during a *Terry* stop). See also *Berkemer v McCarty*, 468 US 420, 440; 104 S Ct 3138; 82 L Ed 2d 317 (1984) (stating that "[i]f a motorist who has been detained pursuant to a traffic stop [or a *Terry* stop] thereafter is subjected to treatment that renders him 'in custody' for practical purposes, he will be entitled to the full panoply of protections prescribed by *Miranda*.").

Taken as a whole, there is a reasonable probability that, Johnson, who was 14 years of age at the time, did not feel free to leave. She had tried to flee from the police when they first turned around, but they pursued and apprehended her. Being prevented from fleeing would certainly lead to a belief that one is not free to leave. Then, sometime between when she was caught and when the body camera started recording, her boyfriend was handcuffed and led away by a police officer. Seeing a confederate led away in handcuffs would also suggest that one is not free to leave. When the body camera footage began, Johnson was leaning against a wall, but was ordered to sit down on a bench. A police order to sit down would also lead an ordinary person to believe that he or

-4-

she is not free to leave. Next, Johnson was questioned for a few minutes, sometimes by one officer and sometimes by two officers. Both officers were in full uniform and armed. She was repeatedly accused of lying, warned to not lie, and chastised for running. Both officers conducted searches of her water bottle without first asking her if they could do so. The nature and scope of the questions likewise suggest that Johnson was not free to leave. Considered in totality, at the time that Johnson made the first inculpatory statement, it is plain that she was subject to a custodial interrogation because she could have reasonably believed that she was not free to leave. Because Johnson's custodial interrogation was not preceded by an adequate warning, the statements she made were not admissible at her criminal trial. See *Elliott*, 494 Mich at 301. By failing to move to suppress the statements, Johnson's lawyer's performance was deficient.

We next consider whether Johnson was prejudiced by her lawyer's deficient performance. See *Yeager*, 511 Mich at 488. Without Johnson's inculpatory statements, the evidence linking her to the theft of the alcohol from the grocery store is very limited. It amounts to the police seeing Johnson with what appeared to be an alcoholic beverage in front of the store. She then ran and was caught.[4] She smelled of intoxicants. During questioning, a bag of alcoholic drinks was discovered in the area that the juveniles had been standing. The cans were still cold, which suggested that they had just been obtained. There is no surveillance footage from the store to show which juvenile had taken the beverages from the store. Thus, in the absence of her confession to stealing the beverages, the evidence suggested, at best, that any one of the juveniles might have been the one to steal it. Indeed, Johnson testified that she had gone to the store with her boyfriend because he wanted to obtain alcohol. She did not know how he planned to do obtain it and speculated that he might try to get someone older to buy it for them. She stated that he went into the store and was the one to steal it. Her testimony was corroborated, in part, by her younger brother.

Although there are aspects of the record that certainly suggest that Johnson stole the alcohol either directly or as an aider and an abettor, her confession during the body camera footage was certainly the strongest and most persuasive evidence that she was responsible. In the absence of that testimony, there is a reasonable probability that the outcome of the proceedings would have been different. Accordingly, Johnson was prejudiced by her lawyer's deficient performance. See *id*. Remand for a new trial is required.

Reversed and remanded for a new trial. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Christopher M. Murray
/s/ Michael J. Kelly

---

[4] Flight can be indicative of consciousness of guilt. *People v Coleman*, 210 Mich App 1, 4; 532 NW2d 885 (1995). However, it does not necessarily follow that Johnson ran because she was conscious of her guilt of retail fraud as opposed to guilty of consuming alcohol while she was underage.