*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

HOWARD KERMIT MEAD,

        Defendant-Appellant.

UNPUBLISHED
August 29, 2019

No. 341688
Jackson Circuit Court
LC No. 16-004746-FH

Before: STEPHENS, P.J., and GLEICHER and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right his conviction and sentence for operating a motor vehicle while intoxicated, third offense (OWI-III) under MCL 257.625(1), (9)(c). The trial court sentenced defendant, as a fourth-offense habitual offender, to a prison term of 36 to 180 months. We affirm defendant's conviction but vacate his sentence and remand for resentencing.

## I. BACKGROUND

Defendant and his girlfriend attended a party. In the early morning hours after the party, their vehicle entered a ditch alongside the roadway. Sergeant Rick Gillespie and Officer Chad Root of the Blackman-Leoni Township Department of Public Safety (BLPDS) responded. Both testified that defendant was in the driver's seat when they arrived, and that defendant's girlfriend sat in the passenger seat. When questioned, defendant initially admitted that he was driving before the accident. Later he claimed he had merely arrived on the scene to help the people in the vehicle get out of the ditch. Still later he maintained that his girlfriend had been driving and lost control of the vehicle while he was a passenger. Defendant's girlfriend asserted her Fifth Amendment right against self-incrimination when asked whether defendant was driving the vehicle when they left the party, whether she moved to the passenger seat after the vehicle left the roadway, and whether she had had anything to drink before the accident.

The officers perceived a strong odor of intoxicants and noticed that defendant slurred his words and had glassy eyes. Defendant eventually told them that he had had "a lot" to drink that night. Defendant refused to perform field sobriety tests and was then arrested for operating a vehicle under the influence of alcohol. A blood alcohol test performed pursuant to a search

-1-

warrant yielded an alcohol content of 0.370 grams per 100 milliliters of blood. The jury found defendant guilty of operating a motor vehicle while intoxicated.

The trial court determined that defendant's sentencing guidelines variables resulted in a Prior Record Variable (PRV) score of 22 and an Offense Variable (OV) score of 20. These scores placed defendant in PRV Level C and OV Level II, resulting in a guidelines minimum sentence range of 0 to 11 months' imprisonment. MCL 777.66. As a fourth-offense habitual offender, the upper limit of defendant's recommended minimum sentence range increased by 100% to 0 to 22 months' imprisonment. MCL 777.21(3)(c). The trial court imposed a minimum sentence of 36 months, adding one year and two months to the statutorily enhanced, guideline-recommended sentence. Although the court offered several reasons for departing from the enhanced guidelines, it did not address the extent of the departure and did not refer to the guidelines.

## II. REASONABLENESS OF THE DEPARTURE SENTENCE

Defendant argues that the trial court abused its discretion and violated the principle of proportionality when it imposed a sentence in excess of the recommended minimum sentencing guidelines range. Specifically, defendant argues that the trial court sentenced him on the basis of its subjective opinion or speculation regarding his criminal propensity, rather than on the basis of the seriousness of the offense. Additionally, defendant argues that the trial court did not adequately articulate reasons for the length of the sentence imposed.

We review departure sentences for reasonableness. *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). When assessing reasonableness, we consider whether the trial court abused its discretion by violating the principle of proportionality set forth in *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990).

To implement the principle of proportionality, a sentencing court must evaluate "where, on the continuum from the least to the most serious situations, an individual case falls and . . . sentence[e] the offender in accordance with that determination." *Id*. at 654. The statutory guidelines are "a useful tool" in selecting a proportionate sentence, as they "embody the principle of proportionality." *People v Dixon-Bey*, 321 Mich App 490, 524; 909 NW2d 458 (2017). Nevertheless, a departure sentence may be "more proportionate" based on considerations including "(1) whether the guidelines accurately reflect the seriousness of the crime; (2) factors not considered by the guidelines; and (3) factors considered by the guidelines, but given inadequate weight." *Id*. at 525 (citations omitted).

When a trial court elects to impose a departure sentence, it must "justify the sentence imposed to facilitate appellate review, which includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been." *Id*. (quotation marks and citations omitted). "A sentence cannot be upheld when the connection between the reasons given for the departure and the extent of the departure is unclear." *People v Smith*, 482 Mich 292, 304; 754 NW2d 284 (2008). In other words, a sentencing court validates a departure sentence by explaining why the sentence it selected better fits the crime and the offender than would a sentence within the guidelines. If an appellate court determines that the "trial court has abused its discretion in applying the principle of

proportionality by failing to provide adequate reasons for the extent of the departure sentence imposed, it must remand to the trial court for resentencing." *People v Steanhouse*, 500 Mich 453, 476; 902 NW2d 327 (2017) (*Steanhouse II*).

In *Dixon-Bey*, 321 Mich App at 526-527, 529, this Court identified several signals of potential disproportionality, including a sentence based on factors already accounted for in the guidelines and a sentencing court's reliance on factors "not unique" to the defendant. Both are present here. Additionally, *Dixon-Bey* stressed that if the reasons for a particular departure are unclear, an appellate court is not empowered to fill in the gaps by substituting its own proportionality judgment. *Id*. at 529.

At sentencing, the parties agreed that defendant's minimum sentencing range was 0 to 22 months, reflecting an enhancement based on defendant's status as an habitual fourth offender. Had this been defendant's first OUIL conviction, his sentencing range would have been 0 to 11 months. Defendant's conviction record bumped up the top end of his minimum sentence range by nearly a year. But the trial court went even further. The trial court justified its decision to depart from the enhanced guidelines as follows:

> The court has taken into consideration the information contained within the presentence report as well as the comments today. The court has reviewed the presentence report, your prior history. I will note that the author noted that you've been afforded virtually every resource available through the State of Michigan in the County of Jackson, yet continues to abuse alcohol and drive a motor vehicle.

> I also noted that you've had multiple attempts at treatments and services: Harbor Hall, Scram, SAI, KPEP, CPI and yet this as your seventh drunk driving with a .33 blood alcohol level. It's unfortunate. I understand this is all about alcohol and this is all about your substance abuse disorder and where it has led you. But I also know for certain that the community isn't safe if you're out in it. So I think the sentence warranted today is in excess of the guidelines.

The trial court expressed three reasons for departing: this was defendant's seventh drunk driving offense, defendant had failed multiple attempts at rehabilitation, and "the community isn't safe if you're out and about in it." Defendant's repeat-offender status and the extent of his intoxication were legitimate reasons to impose an upwardly departing sentence. "[S]pecific characteristics of an offense and an offender that strongly presage future criminal acts" may justify an out-of-guidelines sentence, especially "if they are not already adequately contemplated by the guidelines." *People v Horn*, 279 Mich App 31, 45; 755 NW2d 212 (2008). A court may also consider a defendant's criminal history, failure to rehabilitate, and the concern for the protection of society. *Id*. at 45-46; see also *Dixon-Bey*, 321 Mich App at 525 n 9.

However, the trial court did not fulfill its duty to justify on the record the specific sentence imposed. The court offered no explanation for the length of the departure it selected. Nor did the court reference the guidelines, which penalized defendant's recidivism. Defendant's PRV score was 22, representing 20 points under PRV 2 (three or more low severity felony convictions) and 2 points under PRV 5 (one prior misdemeanor conviction). His OV score of 20

derived from his score of 20 points under OV 18, for operating a vehicle with a blood alcohol content of greater than 0.20. And, as we have noted, defendant's guideline score was then enhanced by his fourth habitual offender status. While we share the trial court's concern that defendant repeatedly offended by driving while intoxicated, the guidelines took this into consideration in two ways: through his PRV score of 22, and through the fourth habitual offender enhancement.

The trial court did not explain how or why the guidelines inadequately accounted for the defendant's recidivism and his interrelated failure to benefit from sobriety programming (a circumstance shared by every repeat drunk-driving offender). Nor did the court differentiate defendant from every other drunk driver when declaring "the community isn't safe if you're out in it." The trial court was similarly silent regarding why a sentencing range of 36 to 180 months' incarceration was more proportionate than the guidelines sentence of 0-22 months. Because the court failed to address the reasons underlying the extent of the departure sentence it imposed, we vacate the sentence and remand for further record consideration.

## III. FIFTH AMENDMENT VIOLATION

Defendant argues in his Standard 4 brief[1] that his statements to police officers at the scene of the accident were improperly admitted at trial because they were the product of a custodial interrogation for which the police officers did not provide him *Miranda*[2] warnings.

Generally, to properly preserve the issue of whether evidence obtained from a search and seizure was erroneously admitted, a defendant must timely move the trial court to suppress the evidence. *People v Snider*, 239 Mich App 393, 406; 608 NW2d 502 (2000). Dfendant did not file a suppression motion and did not raise the issue of its admissibility before the trial court. We review unpreserved issues for plain error affecting substantial rights. See *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

The trial court did not err by admitting defendant's statements to police, because defendant was not in custody at the time he made them. See *People v Steele*, 292 Mich App 308, 316-317; 806 NW2d 753 (2011). Police officers may investigate suspicious circumstances without placing a suspect in custody. *Id*. at 318. Further, a police officer may question a driver regarding his or her consumption of intoxicants and may ask the driver to perform field sobriety tests without taking him or her into custody. See *Berkemer v McCarty*, 468 US 420, 441-442; 104 S Ct 3138; 82 L Ed 2d 317 (1984).

The officers' questions and request that defendant undergo a field sobriety test were reasonably related to their investigation of an accident which appeared to involve alcohol. Defendant voluntarily answered the officers' brief questioning in a public environment near the

---

[1] A supplemental appellate brief filed pro se by a criminal defendant pursuant to Michigan Supreme Court Order 2004-6, Standard 4.

[2] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

motor vehicle. The officers' questioning did not subject defendant to a custodial interrogation or a custodial environment and, therefore, the officers were not required to provide *Miranda* warnings. See *Steele*, 292 Mich App at 319.

## IV. SUPPRESSION OF/FAILURE TO PRESERVE EXCULPATORY EVIDENCE

Defendant also argues in his Standard 4 brief that the prosecution suppressed footage from a police officer's body camera filmed at the scene of the accident, in violation of defendant's due-process rights, and that the prosecution and police failed to preserve this footage in bad faith. Because defendant did not raise this alleged constitutional error before the trial court, we review it for plain error affecting defendant's substantial rights. *Heft*, 299 Mich App at 78; see also *Carines*, 460 Mich at 763.

Criminal discovery is governed by MCR 6.201. See *People v Phillips*, 468 Mich 583, 588; 663 NW2d 463 (2003). There is no general constitutional right to discovery. However, the prosecution violates a defendant's due-process rights when, in the face of a discovery request, it "withholds from a criminal defendant evidence that is material to his guilt or punishment." *Cone v Bell*, 556 US 449, 469; 129 S Ct 1769; 173 L Ed 2d 701 (2009). Further, the prosecution must disclose exculpatory material and impeachment evidence regardless of whether the defendant requests the evidence. See *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963); *People v Jackson*, 292 Mich App 583, 590-591; 808 NW2d 541. The Rules of Professional Conduct obligate the prosecution to timely disclose to the defense all known evidence and information that tends to negate the defendant's guilt or mitigates the degree of the offense. MRPC 3.8(d); *People v Aldrich*, 246 Mich App 101, 111; 631 NW2d 67 (2001). If a party fails to comply with MCR 6.201, the court has the discretion to fashion a remedy, including ordering that testimony or evidence be excluded. MCR 6.201(J); *People v Greenfield (On Reconsideration)*, 271 Mich App 442, 453; 722 NW2d 254.

To establish a violation of a defendant's due-process right to the disclosure of information, the defendant must show that: (1) the prosecution has suppressed evidence; (2) the evidence is favorable to the accused; and (3) the evidence, when viewed in its totality, is material, regardless of the prosecution's good or bad faith. *People v Chenault*, 495 Mich 142, 150, 155; 845 NW2d 731 (2014). In assessing the materiality of the evidence, "[t]he question is whether, in the absence of the suppressed evidence, the defendant 'received a fair trial, understood as a trial resulting in a verdict worthy of confidence.' " *Id*. at 150-151 (citation omitted).

With regard to an alleged failure to *preserve* evidence, rather than to disclose that evidence, a defendant must generally show that the police acted in bad faith unless a defendant can demonstrate that the lost evidence was actually exculpatory. *Arizona v Youngblood*, 488 US 51, 57; 109 S Ct 333; 102 L Ed 2d 281 (1988); see also *People v Hanks*, 276 Mich App 91, 95; 740 NW2d 530 (2007). "Defendant bears the burden of showing that the evidence was exculpatory or that the police acted in bad faith." *People v Johnson*, 197 Mich App 362, 365; 494 NW2d 873 (1992). "If the defendant cannot show bad faith or that the evidence was potentially exculpatory, the state's failure to preserve evidence does not deny the defendant due process." *Heft*, 299 Mich App at 79.

Sergeant Gillespie testified at trial that he had activated his body camera during the stop and had followed standard procedures to upload and store that video on an outside company's network system, but that his video recording was not later downloaded to the storage network used by BLPDS. He hypothesized that Officer Root's body camera video from the same incident was downloaded instead. But Sergeant Gillespie testified that the only difference between the two recordings was that his recording would have reflected contact with defendant in the driver's seat, whereas the other recording commenced with defendant was standing next to the vehicle.

Defendant has failed to show that the allegedly suppressed or lost video footage was exculpatory. Assuming that the video recording showed that defendant was in the driver's seat, the evidence would have supported the jury's verdict. Moreover, and wholly apart from the officers' testimony, the jury could have relied solely on defendant's own statements as evidencing that he was driving at the time of the accident. Therefore, we conclude that defendant has failed to show that the video recording was favorable to him or that there was a reasonable probability that the outcome of the trial might have been different had the evidence been disclosed to the defense. *Chenault*, 495 Mich at 150-151; see also *Kyles v Whitley*, 514 US 419, 441; 115 S Ct 1555; 131 L Ed 2d 490 (1995) (holding that disclosure of the evidence at issue would have resulted in a weaker case for the prosecution and a stronger case for the defense and would have made a different result reasonably probable).

For the same reasons, defendant's argument that the government failed to preserve potentially exculpatory evidence fails. Defendant has provided no basis on which to conclude that potentially exculpatory evidence ever existed. Further, defendant has failed to demonstrate bad faith. Sergeant Gillespie testified that he followed proper procedures to secure the storage of the video recording. There was no evidence presented that Sergeant Gillespie knew (if true) that the video recording was not retained on the storage network. There was also no evidence or indication that Sergeant Gillespie acted to delete the video recording, apart from defendant's unsubstantiated assertion that the officers committed misconduct and attempted to hide the evidence and that the prosecution intentionally suppressed the evidence. See *Johnson*, 197 Mich App at 365-366 (holding that the defendant's assertion that the police officers destroyed evidence regarding his arrest was not supported by anything other than the defendant's own testimony and that defendant failed to show the police officers acted in bad faith). Because defendant did not establish any factual support for his claims, we conclude that defendant has not demonstrated plain error with regard to evidence preservation or suppression. See *Carines*, 460 Mich at 763-764.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, defendant argues that he was denied the effective assistance of defense counsel, who failed to file a motion to suppress defendant's statements to the officers, to pursue sanctions for discovery violations, and to effectively cross-examine witnesses. We disagree.

Because no evidentiary hearing was held on this issue, our review of this issue is limited to errors apparent on the record. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

"Effective assistance of counsel is presumed, and the defendant bears the heavy burden of proving otherwise." *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004). In order to overcome this presumption, a defendant must show that: (1) defense counsel's performance did not meet an objective standard of reasonableness under the circumstances and according to prevailing professional norms and (2) there was a reasonable probability that, but for defense counsel's errors, the results of the proceeding would be different. *Strickland v Washington*, 466 US 668, 687-688; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Pickens*, 446 Mich 298, 312-313; 521 NW2d 797 (1994). Additionally, a defendant must show that the result that occurred was fundamentally unfair or unreliable. *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012).

"Defense counsel must be afforded broad discretion in the handling of cases." *Pickens*, 446 Mich at 325. Defense counsel's decisions regarding what evidence he or she presents on behalf of the defense is presumed to be a matter of trial strategy. *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). How defense counsel questions a witness is also presumed to be a matter of trial strategy. *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). And "[d]eclining to raise objections can often be consistent with sound trial strategy." *People v Unger*, 278 Mich App 210, 242, 253; 749 NW2d 272 (2008).

Regarding defendant's claim that his trial counsel should have moved to suppress defendant's statements to police, the police did not violate defendant's Fifth Amendment Rights, as discussed earlier, and counsel was not ineffective for failing to raise a futile objection. *People v Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998). Similarly, because defendant has not demonstrated that Sergeant Gillespie's video was exculpatory or that there was bad faith on the part of the police, defense counsel was not ineffective for failing to request a remedy for a discovery violation because such a request would have been futile. See *Greenfield*, 271 Mich App at 454 n 10.

Further, it is not apparent from the record that defense counsel failed to use the information contained in the police report to effectively cross-examine and impeach police witnesses. Defense counsel questioned the police officers regarding the differences between their testimony, the body camera video recording that was admitted at trial, and the police report. Defense counsel also elicited testimony on cross-examination that defendant's girlfriend claimed to have been driving the vehicle when it left the roadway. Defendant has not overcome the presumption that defense counsel's decisions regarding the questioning of witnesses was sound trial strategy. See *Dixon*, 263 Mich App at 398; *Horn*, 279 Mich App at 39. Finally, defendant has failed to demonstrate that, had defense counsel more strongly emphasized to the jury the alleged discrepancies among the police officers' testimonies, the police report, and the video recording admitted at trial, the result of the trial would have been different. See *People v Petri*, 279 Mich App 407, 412; 760 NW2d 882 (2008). We conclude that defendant has failed to show that defense counsel provided ineffective assistance or that a different result was reasonably probable. See *Strickland*, 466 US at 687-688; *Solmonson*, 261 Mich App at 663.

We affirm defendant's conviction but vacate his sentence and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Cynthia Diane Stephens
/s/ Elizabeth L. Gleicher