*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

UNPUBLISHED
January 16, 2020

v

JAMES EDWARD SMITH,

Defendant-Appellee.

No. 349283
Jackson Circuit Court
LC No. 18-002402-FC

Before: CAMERON, P.J., and SHAPIRO and SWARTZLE, JJ.

PER CURIAM.

This case arises from a police detective's jailhouse interview of defendant. The trial court granted defendant's motion to suppress his statements made during the interview, based on its conclusion that defendant did not validly waive his rights under *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 LE2d 694 (1966), and that defendant unequivocally invoked his right to counsel before making the statements. This Court granted the prosecutor leave to appeal. See *People v Smith*, unpublished order of the Court of Appeals, entered August 13, 2019 (Docket No. 349283). Under *Howes v Fields*, 565 US 499, 511; 132 S Ct 1181; 182 L Ed 2d 17 (2012), a defendant is not considered to be "in custody" for *Miranda* purposes simply because he is incarcerated on unrelated charges at the time of the police interview. Therefore, we vacate the order granting the motion to suppress and remand to the trial court for additional factual findings and application of the proper legal standards.

## I. BACKGROUND

The Hillsdale County Prosecutor charged defendant with two counts of first-degree criminal sexual conduct (CSC-I) arising from the sexual assault of his then-minor son. Defendant subsequently pleaded guilty to a single count of CSC-I in that case, and the Hillsdale Circuit Court sentenced him to a term of 2 years and 11 months to 25 years in prison for that conviction.

On June 13, 2018, while defendant was incarcerated in the Hillsdale County jail awaiting trial on the charges brought against him in Hillsdale County, Jackson County Sheriff's Office Detective Thomas Freeman visited defendant at the jail and questioned him about alleged acts of

-1-

sexual abuse involving defendant's then-minor stepdaughter, which allegedly occurred in Jackson County.

During the interview, Detective Freeman verbally advised defendant of his *Miranda* rights and provided him with a written copy of those rights. Detective Freeman did not, however, read aloud the contents of the acknowledgment and waiver section of the advice-of-rights form, but merely offered defendant the opportunity to read the form to himself. Defendant signed the advice-of-rights form, apparently without reading it. Detective Freeman then advised defendant that he had "the absolute right to stop anytime you wish and to answer no further questions or make no further statement."

Detective Freeman then asked defendant if he knew what the detective wanted to talk with him about, and defendant responded that the topic was likely the molestation of his stepdaughter. Defendant then stated "I thought that's what I was *here* for," referring to his incarceration in the Hillsdale County jail. Defendant did not appear to understand why the Hillsdale County prosecutor had filed two counts of CSC-I against him, and he expressed confusion regarding the identity of the alleged victim or victims at issue in Hillsdale County's prosecution. Detective Freeman responded that the police investigation in Jackson County concerned acts against defendant's stepdaughter and stated that he could not speak to the prosecution in Hillsdale County.

When Detective Freeman referenced the allegations made by defendant's stepdaughter, defendant responded "I'd rather have a lawyer present" before talking about those allegations. Despite defendant's request for an attorney, Detective Freeman continued the interview by asking defendant whether he had previously spoken with a state trooper about his stepdaughter's allegations. Defendant explained that he attempted to commit suicide the night before he spoke to the state trooper and that he was "in a haze for two or three days" from the effects of the drugs he took during the suicide attempt. Defendant also stated that, even though he was "still under the influence" of various drugs at the time, he informed the state trooper during the interview that he "wanted a lawyer."

Undeterred by defendant's second reference to the desire to speak to a lawyer, and even stating that "I can respect your request to have an attorney present," Detective Freeman pressed on, asking defendant whether statements he made to the state trooper about his stepdaughter's allegations were true. Detective Freeman also asked defendant why he tried to kill himself, and what methods he employed in that attempt. In so doing, it appears that Detective Freeman was attempting to spur defendant into making incriminating statements tying his suicide attempt to the allegations that he sexually assaulted his stepdaughter.

Detective Freeman further asked defendant about the context of text messages that he allegedly sent to his wife about his stepdaughter's allegations. Defendant stated, "Well, those are what they are you know. You got those, they're what they are you know." Defendant also indicated that he could not lie to his wife. Defendant then stated, "But, like I said, I'd rather have a lawyer present." Detective Freeman responded that he did not want to make defendant talk about anything that he was not comfortable talking about without an attorney. Defendant again expressed his confusion regarding why the Hillsdale County prosecutor had filed two counts of CSC-I against him, and stated that he had "not seen a lawyer here yet." Detective

Freeman stated that "we won't speak anymore" and defendant said, "I'd like a court appointed lawyer." Detective Freeman concluded the interview and gave defendant a business card with his contact information.

On September 10, 2018, the Jackson County Prosecutor charged defendant with two counts of CSC-I, MCL 750.520b(1)(a), one count of aggravated indecent exposure, MCL 750.335a(2)(b), and one count of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a). In the Jackson Circuit Court, defendant moved to suppress his statements to Detective Freeman under the Fifth Amendment to the federal Constitution. Defendant's motion assumed, without examination, that defendant was "in custody" for *Miranda* purposes when questioned by Detective Freeman. Defendant argued that he did not validly waive his Fifth-Amendment right to remain silent. Defendant further argued that he invoked his Fifth-Amendment right to counsel and that Detective Freeman improperly continued to question him. Therefore, defendant asserted two independent reasons for the suppression of statements he made to the detective during the interview.

The prosecutor responded that Detective Freeman was not required to advise defendant of his *Miranda* rights because the federal Supreme Court had ruled in *Fields* that an individual incarcerated for an offense unrelated to an offense about which he is being interviewed is not, necessarily, "in custody" for *Miranda* purposes with regard to the latter offense. The prosecutor further argued that, even if defendant was "in custody" for *Miranda* purposes, he validly waived his rights when he signed the advice-of-rights form provided by the detective. Finally, the prosecutor argued that defendant never made an unequivocal request for counsel, and that, if he had, he reinitiated the interview by continuing to talk to the detective after referencing his desire to consult an attorney. Therefore, the prosecutor asserted that there was no violation of the Fifth Amendment and there was no reason to suppress defendant's statements.

At a hearing held on defendant's motion, the trial court reviewed the recording of defendant's interview, entertained arguments from counsel, and granted defendant's motion to suppress from the bench. The trial court reasoned:

> So, first of all I'm a little concerned about the application of *Fields*, because I think there's some discussion right from the beginning whether he's here on the Hillsdale case, is here on the Jackson case. And then when we get to the—so, if the *Fields* case was applicable if they went up on appeal and said that it is then that's a no brainer we're all done. But, on the other hand when I get down to—I think Detective Freeman did a great job with the first part of the form and if he'd of just sat and read in all of the terms and conditions of the acknowledgment and—of waiver and then asked Mr. Smith if he understood those and if he did would you go ahead and sign on that line. But, it's [a] single spaced typed [form]; I mean it's difficult even with me with my bifocals on to read it. You know I watched how many seconds he had—I think [defense counsel] saying about a three count was about it, so I'm certainly not satisfied that the acknowledgment and waiver that you could show the Court by a preponderance of the evidence that his waiver was made knowingly, intelligently, and voluntarily. Then we have the next issue of the attorney. I mean he says, "I'd rather have my lawyer present," that's pretty good. I mean you know sometimes we know we have defendants

-3-

that do things like, you know I might need a lawyer; it might be helpful you know for me to talk to a lawyer. But, he here says, "I'd rather have a lawyer present," and I think at that point it's up to the detective or the police to get some further clarification then at that point, do you want us to get you a court appointed lawyer. Then I put a second notice and I really put in there I don't really hear any equivocation where he's kind of saying well, I don't really know if I need—I mean he says, "I'd rather have a lawyer present," "I'd like to have a lawyer here," the last time, "I'd like to have a court appointed lawyer." I mean I just don't know how much clearer that could be, so in that sense and those reasons I'm going to grant the defense motion to suppress. Now, I will say right on the record if the *Fields* case is on point the prosecutor wins, you know I mean for all the reasons that you detail. But, to me that's going to be an issue for the Court of Appeals, but on the other hand if the *Fields* case doesn't apply I think the defense properly should and I think the Court is correctly following the law.

The trial court then clarified that, in its opinion, the *Fields* case did not apply to the facts of this case, but did not explain why it reached that conclusion. As can be seen above, the trial court made a fleeting reference to defendant's apparent confusion regarding the nature of the criminal charges he was facing in Hillsdale County, but made no factual findings pertinent to whether defendant was "in custody" for *Miranda* purposes. Further, the trial court did not expressly state a legal conclusion, based on those factual findings, regarding whether defendant was "in custody" for *Miranda* purposes. The trial court simply declared, without explanation, that the binding precedent of the United States Supreme Court, as expressed in *Fields*, did not apply to this case.

Despite the lack of factual findings and legal analysis regarding this critical issue, the trial court granted defendant's motion to suppress for two independent reasons. First, according to the trial court, the record established that Detective Freeman failed to obtain an adequate acknowledgment from defendant that he understood his *Miranda* rights and was willing to waive those rights. As a consequence, the judge concluded that defendant's signed acknowledgment and waiver of his rights was not voluntarily, knowingly, and intelligently given, rendering defendant's statements inadmissible. Second, according to the trial court, suppression was mandated because the detective continued to question defendant after he made an unequivocal request for legal counsel. The trial court did not address the prosecutor's argument that, even if defendant made an unequivocal request for counsel, he voluntarily reinitiated the interview with the detective.

The trial court effectuated its bench ruling by entry of an order holding that "all statements made by the Defendant on June 13, 2018, to Det. Thomas Freeman at the Hillsdale County Jail are suppressed and are inadmissible at trial."

This appeal followed.

## II. ANALYSIS

### A. STANDARD OF REVIEW

Whether a person was "in custody" and, thus, entitled to receive *Miranda* warnings, is a mixed question of fact and law that must be answered independently by an appellate court after de novo review of the record. *People v Barritt*, 325 Mich App 556, 561; 926 NW2d 811 (2018). This Court reviews for clear error a trial court's "factual findings concerning the circumstances surrounding statements to the police." *Id*. At the same time, this Court reviews de novo questions of law relevant to the suppression motion, *People v Hawkins*, 468 Mich 488, 496; 668 NW2d 602 (2003), and the ultimate decision regarding the motion to suppress the defendant's statements, *Barritt*, 325 Mich App at 561.

## B. CUSTODIAL INTERROGATION

### 1. APPLICABLE LAW

Both the state and federal Constitutions guarantee a person's right against self-incrimination. Const 1963, art 1, § 17; US Const, Am V. To protect this right, law-enforcement officers must advise a defendant of his constitutional rights if the defendant is subject to a custodial interrogation. *Barritt*, 325 Mich App at 561.

> *Miranda* warnings are not required unless the accused is subject to a custodial interrogation. Generally, a custodial interrogation is a questioning initiated by law enforcement officers after the accused has been taken into custody or otherwise deprived of his or her freedom of action in any significant way. Whether an accused was in custody depends on the totality of the circumstances. The key question is whether the accused could have reasonably believed that he or she was not free to leave. [*People v Steele*, 292 Mich App 308, 316-317; 806 NW2d 753 (2011) (citations omitted).]

To determine whether a defendant was "in custody" for purposes of triggering *Miranda* protections, "courts consider both whether a reasonable person in the defendant's situation would believe that he or she was free to leave and whether the relevant environment presented the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." *People v Cortez (On Remand)*, 299 Mich App 679, 692; 832 NW2d 1 (2013) (cleaned up). "Statements made by a defendant to the police during a custodial interrogation are not admissible unless the defendant voluntarily, knowingly, and intelligently waives the constitutional right against self-incrimination." *Barritt*, 325 Mich App at 561-562.

"As used in our *Miranda* case law, 'custody' is a term of art that specifies circumstances that are thought generally to present a serious danger of coercion." *Fields*, 565 US at 508-509. Although a defendant who is incarcerated is "in custody" in one sense, this understanding of "custody" is distinct from the determination whether a defendant is in a custodial situation for *Miranda* purposes. See *id*. at 508 n 5; see also *People v Honeyman*, 215 Mich App 687, 695; 546 NW2d 719 (1996) ("That the interrogation occurred while defendant was in custody was happenstance."). "[I]mprisonment alone is not enough to create a custodial situation within the meaning of *Miranda*." *Fields*, 565 US at 511. "Instead, whether incarceration constitutes custody for *Miranda* purposes . . . depends upon whether it exerts the coercive pressure that *Miranda* was designed to guard against—the danger of coercion that results from the *interaction*

of custody and official interrogation." *People v Elliott*, 494 Mich 292, 306; 833 NW2d 284 (2013) (cleaned up).

Furthermore, the "Fifth Amendment right identified in *Miranda* is the right to have counsel present at any custodial interrogation." *Edwards v Arizona*, 451 US 477, 485-486; 101 S Ct 1880; 68 L Ed 2d 378 (1981). Absent a custodial interrogation, there is no infringement of a Fifth-Amendment right and no occasion to determine whether there has been a valid waiver of that right. *Id*. at 486. Yet, during a custodial interrogation, if an "individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." *Miranda*, 384 US at 473-474. "At this point he has shown that he intends to exercise his Fifth Amendment privilege" and any statements that occur after that point are deemed to be the product of compulsion, "subtle or otherwise." *Id*. at 474. To be effective, an accused's invocation of his right to counsel must be unequivocal. *Davis v United States*, 512 US 452, 459; 114 S Ct 2350; 129 L Ed 2d 362 (1994). Whether a request for an attorney is unequivocal is an objective inquiry. *Id.* at 458-459.

"[A]fter initially being advised of his *Miranda* rights, the accused may himself validly waive his rights and respond to interrogation," but "a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation after being advised of his rights." *Edwards*, 451 US at 484. Thus, once an accused makes a request for counsel, law enforcement officers may not subject him to further questioning "unless the accused himself initiates further communication, exchanges, or conversations with police." *Id*. at 484-485.

## 2. THE TRIAL COURT'S RULING

In this case, although the trial court indicated that it believed defendant was "in custody," it appears that the trial court was referring to the bare fact of defendant's incarceration in the Hillsdale County jail, rather than whether defendant was actually "in custody" for *Miranda* purposes. The trial court never made an express finding on the record pertinent to whether defendant was "in custody" for *Miranda* purposes when interviewed by the detective. Moreover, there is nothing in the record to suggest that the trial court applied the legal standards set forth in *Fields*, *Barritt*, *Cortez* and *Elliott*. Rather, the trial court appears to have left it to this Court to advise it of the correct legal standards to apply, and did so without providing this Court with the requisite factual findings to which those legal standards must be applied. In light of these deficiencies, we must remand this matter to the trial court for additional factual findings and reconsideration under the proper legal standards.

## 3. NECESSARY FACTFINDING AND LEGAL CONCLUSIONS REGARDING CUSTODIAL INTERROGATION

On remand, the trial court must articulate factual findings regarding the following issues: (1) whether defendant was "in custody" for *Miranda* purposes; (2) if so, whether defendant validly waived his Fifth-Amendment right to remain silent, given the detective's failure to read aloud the contents of the acknowledgement and waiver section of the advice-of-rights form; (3) if defendant did validly waive his right to remain silent, whether he unequivocally invoked his

Fifth-Amendment right to counsel; and (4) if defendant unequivocally invoked his right to counsel, whether he later reinitiated the interview with police under *Edwards*.

First, to determine whether defendant was "in custody" for *Miranda* purposes, the trial court must

> determine, in light of all the objective circumstances surrounding the interrogation: (1) whether a reasonable person would have felt that he was not at liberty to terminate the interrogation and leave; and (2) whether the environment presented the same inherently coercive pressures as the type of station house questioning involved in [*Miranda*]. [*Barritt*, 325 Mich App at 560, quoting *People v Barritt*, 501 Mich 872; 901 NW2d 859 (2017).]

In determining whether a reasonable person would have felt that he was not at liberty to terminate the interrogation and leave, the trial court must consider numerous factors, including the location of the questioning, its duration, statements made during the interview, the presence or absence of physical restraints during the questioning, and the release of the interviewee at the conclusion of the questioning. *Fields*, 565 US at 509; *Barritt*, 325 Mich App at 562-563. No single circumstance is controlling, and the trial court must consider the totality of the circumstances when deciding whether an individual was subjected to custodial interrogation under *Miranda*. *Barritt*, 325 Mich App at 563. Even though a defendant who is incarcerated knows that he is not free to leave the facility, and knows that he is not free to leave the interview room by himself to "make his own way through the facility to his cell," it is nonetheless possible for him to know that he can terminate the police interview and ask "for a corrections officer to arrive and escort him to his cell," an action that would have "returned him to his usual environment." *Fields*, 565 US at 516. Therefore, depending on the totality of the circumstances, including whether the defendant was told that he was free to end the questioning, a defendant incarcerated on a different matter is not automatically deemed to be "in custody" for *Miranda* purposes. *Id*. at 517.

Furthermore, "determining whether an individual's freedom of movement was curtailed is the first step in the analysis, not the last." *Barritt*, 325 Mich App at 580, citing *Elliott*, 494 Mich at 308, and *Fields*, 565 US at 509. A reviewing court must also "ask the additional question whether the relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." *Id*. at 581. This is because "the freedom-of-movement test identifies only a necessary and not a sufficient condition for *Miranda* custody." *Fields*, 565 US at 509, quoting *Maryland v Shatzer*, 559 US 98, 112; 130 S Ct 1213; 175 L Ed 2d 1045 (2010).

In this regard, the United States Supreme Court's opinion in *Fields* is particularly instructive. There, the Court pointed out that a person who is already incarcerated faces a different set of circumstances and conditions in his everyday life than a person who is not incarcerated. This is because when a person who is already incarcerated is questioned by police, there is no "sharp and ominous change" from the conditions of his everyday life, he is "unlikely to be lured into speaking by a longing for prompt release," he "knows that when the questioning ceases, he will remain under confinement," and he "knows that the law enforcement officers who question him probably lack the authority to affect the duration" of his incarceration. *Fields*, 565

US at 511-512. "In short, standard conditions of confinement and associated restrictions on freedom will not necessarily implicate the same interests that the Court sought to protect when it afforded special safeguards to persons subjected to custodial interrogation." *Id*. at 512. Therefore, some of the factors that a court must consider in evaluating the coercive environment include: whether the defendant invited the interview or consented to it in advance, whether the defendant was advised that he could decline to speak with police, the duration of the interview, whether the interviewing police officer was armed, the tone of voice employed by the interviewing officer, whether the defendant was told that he was free to return to his cell whenever he wanted, whether the defendant was physically restrained or threatened, whether the defendant was questioned in a room in which he was not comfortable, whether he was offered food or water, and whether the door to the interview room was open or closed. *Id*. at 515-516.

Although the record on appeal in this case includes a transcript of Detective Freeman's interview of defendant, the Michigan Supreme Court has cautioned that it is the role of the trial court, rather than this Court, to conduct the type of factfinding described above. *Barritt*, 501 Mich 872. We recognize that adequate factfinding regarding all of the factors outlined above may well require an additional evidentiary hearing in the trial court, involving the testimony of witnesses with personal knowledge of the facts surrounding Detective Freeman's interview of defendant. After the trial court has made those factual findings, the trial court must apply the legal standards referenced above and state its conclusion regarding whether defendant was "in custody" for *Miranda* purposes when questioned by Detective Freeman. After the trial court has made those factual findings and conclusions of law, then a record will exist that can be reviewed by the appellate courts.

### 4. ADDITIONAL REQUIRED FACTFINDING AND LEGAL CONCLUSIONS

If the trial court determines that defendant was not "in custody" for *Miranda* purposes under *Fields*, then the trial court must deny defendant's motion to suppress the statements made during the interview by Detective Freeman because "*Miranda* warnings are not required unless the accused is subject to a custodial interrogation." *Steele*, 292 Mich App at 316-317. If the trial court reaches this conclusion, then it need not further consider defendant's motion to suppress based on the Fifth Amendment, because a defendant only has the right to the presence of an attorney during a custodial interrogation. *Edwards*, 451 US at 485-486.

If the trial court determines that defendant was "in custody" for *Miranda* purposes, then the trial court must next consider whether defendant validly waived his right to remain silent, given the detective's failure to read aloud the contents of the acknowledgment and waiver section of the advice-of-rights form to defendant. "Statements made by a defendant during a custodial interrogation are not admissible unless the defendant voluntarily, knowingly, and intelligently waives the constitutional right against self-incrimination." *Barritt*, 325 Mich App at 561-562.

Furthermore, if the trial court determines that defendant was "in custody" for *Miranda* purposes, then it must also consider whether defendant unequivocally invoked his right to counsel. See *Davis*, 512 US at 459. If the trial court determines that defendant unequivocally invoked his right to counsel, then the trial court must next consider whether defendant reinitiated

the interview with police under *Edwards*, 451 US at 484-485.  See *People v Clark*, __ Mich App __; __ NW2d __ (2019).

## C. SIXTH-AMENDMENT RIGHT TO COUNSEL

Finally, we note that while defendant moved to suppress his statements under the Fifth Amendment, the prosecutor asked the trial court whether defendant's Sixth-Amendment right to counsel had been violated, and the trial court ruled that it was. "A defendant's invocation of his Sixth Amendment right to counsel during judicial proceedings is distinct from the invocation of his Fifth Amendment right to counsel during custodial interrogation." *People v Smielewski*, 214 Mich App 55, 60; 542 NW2d 293 (1996). The distinction between a defendant's right to counsel under the Fifth Amendment and his right to counsel under the Sixth Amendment has not been raised on appeal, and it is possible that the prosecutor and trial court simply misspoke. Because we are vacating the trial court's order in full, we need not resolve now whether defendant has a valid claim that his Sixth-Amendment right to counsel was violated. On remand, if defendant chooses to supplement his motion to suppress and add a claim that his Sixth-Amendment right to counsel was also violated, then he may do so and the trial court must make appropriate factual findings and application of the proper legal standards to that claim as well.

## III. CONCLUSION

We vacate the order granting the motion to suppress and remand to the trial court for additional factual findings and application of the proper legal standards consistent with this opinion. We do not retain jurisdiction.

/s/ Douglas B. Shapiro
/s/ Brock A. Swartzle

-10-